DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

```
CHRIS CARTY,                    )
                                )
            Petitioner,         )
                                )
       v.                       )    Civil No. 2015-61
                                )
GILBERT DAVID, in his capacity  )
as Prison Warden,               )
                                )
            Respondent.         )
                                )
```

APPEARANCES:

**Chris Carty**
Eloy, AZ
    *Pro se petitioner,*

**Claude E. Walker, AG**
**Pamela R Tepper, AAG**
**Su-Layne U. Walker, AAG**
V.I. Department of Justice
St. Thomas, U.S.V.I.
    *For the Gilbert David.*

### MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the petition of Chris Carty, which seeks relief pursuant to 28 U.S.C. § 2254.

    **I.    FACTUAL AND PROCEDURAL HISTORY**

On January 28, 2007, Chris Carty ("Carty") entered the kitchen of a food vendor's booth in the Hospital Ground area of St. Thomas, United States Virgin Islands. The attendant, Errol Stuart ("Stuart"), noticed that Carty appeared to be reaching

into his pocket or waistband. Stuart thought Carty was retrieving a weapon. As a result, Stuart kicked Carty. Carty then drew a pair of scissors and stabbed Stuart in the face several times. Stuart kicked Carty a second time, after which Carty disengaged and fled from the area. Stuart survived the attack, but lost one of his eyes.

After leaving the food booth, Carty proceeded to an area known as "Jah Yard" where a group of people were playing dominoes outside. Carty "bounc[ed] around" and "circl[ed] the table twice" before approaching one of the players, Glen Blyden ("Blyden"). See ECF No. 72, Exh. 1 at 116:9-12. Blyden turned to face Carty and asked Carty what he was doing. Blyden then attempted to stand up, and Carty pushed Blyden back down into his seat. The two then began to fight.

While wrestling with Blyden on the ground, Carty somehow obtained a knife and stabbed Blyden in the head and neck. At this point, several bystanders intervened and separated Blyden and Carty. Blyden then retrieved a rock and struck Carty in the head several times.

After the fight concluded, Carty left the area. Blyden was transported to the hospital where he died from a stab wound to the neck. Carty was apprehended by the police later that day.

Following his arrest, Carty was taken to the hospital where he was treated for injuries to his head.

Carty was charged with Attempted First Degree Murder, a violation of 14 V.I.C. §§ 921, 922(a)(1) and 331; Using a Dangerous Weapon During an Attempted First Degree Murder, in violation of 14 V.I.C. § 2251(a)(2)(B); First Degree Assault, in violation of title 14 V.I.C. § 295(3); Using a Dangerous Weapon During a First Degree Assault, in violation of 14 V.I.C. § 2251(a)(2)(B); First Degree Murder, in violation of 14 V.I.C. §§ 921 and 922(a)(1); Second Degree Murder, in violation of 14 V.I.C. §§ 921 and 922(b); Using a Dangerous Weapon During a Second Degree Murder, in violation of 14 V.I.C. § 2251(a)(2)(B); First Degree Assault, in violation of 14 V.I.C. § 295(3); and Using a Dangerous Weapon During a First Degree Assault, in violation of 14 V.I.C. § 2251(a)(2)(B).

From March 2, 2009, through March 4, 2009, Carty's criminal case was tried before a jury in the Superior Court of the Virgin Islands. At trial, Carty's counsel attempted to prove that Carty's actions were in self-defense. Alternatively, Carty's counsel attempted to prove that Carty was intoxicated during the attacks. That fact, combined with the victims' provocation, Carty's counsel argued, prevented Carty from forming the intent necessary for First or Second Degree Murder. To that end, in the

course of cross-examining the Government's witnesses, Carty's counsel introduced evidence of (1) Carty's apparently intoxicated behavior; (2) lab tests that showed Carty had marijuana and cocaine in his blood shortly after the incidents; (3) Carty's statement to the police that Carty was attacked by Blyden and Stuart; (4) Carty's statement to the police that he had consumed alcohol and marijuana before the attacks; (5) the actions of Blyden and Stuart in the course of the fights; and (6) pictures and descriptions of Carty's injuries.

Carty's counsel also requested that the jury be given a diminished intent instruction. The Superior Court agreed, and instructed the jury that

> [N]o act committed while done in the state of voluntary intoxication is less criminal because committed while in that state. However, the court or the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime or offense. But, if you find that the defendant was unlawfully intoxicated, and you reject the defendant's self defense, you cannot acquit or find the defendant not guilty by finding excusable homicide.
> Additionally, if you find that the defendant was so intoxicated as to be incapable of formulating a specific intent to commit murder in the first degree, conviction of the murder in the second degree could not be precluded on the basis that he could not have acted with malic aforethought in as much as he could have possessed the capacity of wantoness. Moreover, voluntary intoxication can

> only negate specific intent of willfulness, premeditation, and deliberation required for first degree murder, but it cannot negate the malice requirement in second degree murder and manslaughter charge.

ECF No. 72, Exh. 5 at 43:1-44:6.

The jury found Carty guilty of first degree assault, using a dangerous weapon during a first degree assault, second degree murder, and using a dangerous weapon during a second degree murder. The jury found Carty not guilty on the remaining counts. The Superior Court entered a judgment of conviction. The Virgin Islands Supreme Court affirmed the conviction on appeal. Carty subsequently sought habeas corpus relief in the Superior Court pursuant to 5 V.I.C. § 1301. The Superior Court dismissed Carty's petition without prejudice for failure to serve.

On August 18, 2015, Carty filed a 28 U.S.C. § 2254 petition (the "§ 2254 petition") in this Court. Carty raises two claims of error, both premised on ineffective assistance of counsel. First, Carty argues that his counsel was constitutionally deficient for failing to call Dr. David Weisher ("Dr. Weisher"), who treated Carty in the hospital, to testify about Carty's injuries. Second, Carty argues that his counsel was constitutionally deficient for failing to raise an insanity defense based on Carty's intoxication during the attacks.

## II. DISCUSSION

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). As Carty's conviction became final after 1996, this case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in

the AEDPA.[1] *See Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)(exhaustion); *Coleman v. Thompson*, 501 U.S. 722, 730, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)(procedural bar); *Bell v. Cone*, 543 U.S. 447, 455, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005)(standard of review under AEDPA).

### III. ANALYSIS

The Sixth Amendment guarantees to criminal defendants the right to effective assistance of counsel. *See Clausell v. Sherrer*, 594 F.3d 191, 196 (3d Cir. 2010), *as amended* (Mar. 23, 2010). Claims of ineffective assistance of counsel are evaluated under the two-pronged test articulated by *Strickland v. Washington,* 466 U.S. 668 (1984). First, a petitioner must show that, considering the facts of the case, his counsel's challenged actions were deficient, i.e., unreasonable. *Id.* at 690. The Court must review a petitioner's claim under the "strong presumption that the counsel's conduct falls within the

---

[1] The Government of the Virgin Islands has waived its exhaustion and procedural defect defenses. *See* ECF No. 72 at 6 ("[T]he Appellant's claims are not barred for failure to exhaust state remedies or any procedural bar."); *see also, e.g.*, *Sharrieff v. Cathel*, 574 F.3d 225, 230 (3d Cir. 2009) ("[B]y conceding exhaustion in its answer to [the petitioner]'s habeas petition, the State clearly, explicitly, and unambiguously waived the exhaustion requirement."); *Trest v. Cain*, 522 U.S. 87, 89 (1997) ("[P]rocedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." (alterations and internal quotation marks omitted)).

wide range of reasonable professional assistance; that is, [the petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 688. "'Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 587). To make this showing, a petitioner must demonstrate that there is a "reasonable probability" that counsel's errors affected the outcome of the proceeding. *Strickland*, 466 U.S. at 694-95.

**A. Failure to Introduce Testimony of Dr. Weisher**

After his fight with Blyden, Carty was taken to the hospital where he was treated for his wounds. The treating physician, Dr. Weisher, indicated on Carty's medical records that Carty had sustained what appeared to be "knife" or "stab wounds" to his head. Dr. Weisher was subpoenaed, but was never called as a witness during the trial. Carty argues that Dr. Weisher's testimony was critical to his self-defense claim, and that Carty's counsel was constitutionally deficient for failing to introduce that testimony.

Generally, a failure to introduce cumulative evidence will not rise to the level of ineffective assistance of counsel. *See Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006) ("Not only was the decision not to call the children reasonable trial strategy, but their testimony would have been cumulative to that which was introduced."); *Brown v. Murphy*, 96 F.3d 1430 (1st Cir. 1996) ("[T]he information provided in the affidavits of Drs. Yudowitz and Profit is essentially cumulative of what was presented at trial. Hence, the failure to present such information does not constitute ineffective assistance of counsel."); *United States v. Keller*, No. CIV.A. 12-3766, 2013 WL 6409360, at *5 (E.D. Pa. Dec. 9, 2013) ("The failure to elicit cumulative testimony cannot be said to constitute ineffective assistance.").

In *Danner v. Cameron*, 564 Fed. App'x 681 (3d Cir. 2014), the David Russell Danner ("Danner") had been convicted of rape in Pennsylvania State court. *Id.* at 682. During his trial, the prosecution presented evidence that the victim was raped on the second day of a four-day hunting trip. *Id.* Danner presented evidence that the victim did not report the rape for two days after she returned from the trip and that her behavior after the rape was not out of the ordinary. *Id.* at 683. Following an unsuccessful appeal and state post-conviction relief

proceedings, Danner brought a § 2254 petition in the district court. *Id.*

In his § 2254 petition, Danner argued that his trial counsel was constitutionally ineffective for failing to call three witnesses who would have testified that "(1) the victim's demeanor seemed ordinary immediately after the hunting trip at issue; and (2) the victim did not disclose the incident at issue to them despite the opportunity to do so." *Id.* at 684. The district court denied the petition. *Id.* at 682. On appeal, the Third Circuit "conclude[d] that the proffered testimony . . . [wa]s virtually indistinguishable from uncontested testimony already in the trial record. Thus, because the proffered testimony merely supported a fact established by the existing evidence, namely, the victim's post-incident silence and demeanor, that testimony is cumulative." *Id.* at 685 (original alterations and internal quotation marks omitted). The Third Circuit held that such "a failure to present cumulative evidence does not render counsel's performance ineffective under *Strickland*," and affirmed the district court's denial of the petition. *Id.*

Here, several witnesses testified that Blyden and Carty fought before Blyden was stabbed. Witnesses also testified that Blyden struck Carty in the head with a rock during the course of

their fight. One of the officers that arrested Carty testified that Carty had "some bruises," had "injuries to his head," and "needed to go to the hospital because of his condition." See ECF No. 72, Exh. 2 at 229:19-20; 230:3-4. Further, Carty's medical records were introduced into evidence along with pictures of Carty's injuries. Considering this evidence, the Court finds that Dr. Weisher's description of injuries that the jury had heard about from several witnesses and of which the jury had seen pictures would be merely cumulative. Accordingly, Carty's trial counsel was not ineffective for failing to call Dr. Weisher as a witness.

### B. Failure to Raise an Insanity Defense

Carty next argues that his Counsel was ineffective for failing to mount an insanity defense based on Carty's intoxication on January 28, 2007.

The insanity defense for territorial defendants in the Virgin Islands is codified at 14 V.I.C. § 14 ("Section 14"). Section 14(4) provides that "[a]ll persons are capable of committing crimes or offenses except . . . persons who are mentally ill and who committed the act charged against them in consequence of such mental illness." 14 V.I.C. § 14(4). As the Supreme Court of the Virgin Islands explained, "[t]he language of section 14(4) parallels the 'product test' for insanity set

out by the United States Court of Appeals for the District of Columbia Circuit in 1954." *Petric v. People*, No. S.CT.CRIM. 2013-0067, 2014 WL 5284572, at *3–4 (V.I. Oct. 16, 2014) (citing *Durham v. United States,* 214 F.2d 862, 874–75 (D.C. Cir. 1954)). The product test consists of two elements: "[1] a mental illness[;] and [2] a causal connection between that illness and the acts committed." *See Gov't of Virgin Islands v. Webbe*, 821 F.2d 187, 189 (3d Cir. 1987).

Section 16, title 14, of the Virgin Islands Code ("Section 16") provides that

> [n]o act committed while in a state of voluntary intoxication is less criminal because committed while in such state. However, the court or the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime or offense.

14 V.I.C. § 16. Thus, under Section 16, "voluntary intoxication may be a defense with respect to an offense requiring specific intent" but "is not a defense to a general intent offense." *George v. Sively*, 254 F.3d 438, 442 (3d Cir. 2001); *see also Gov't of Virgin Islands v. Commissiong*, 706 F. Supp. 1172, 1182 (D.V.I. 1989) (explaining that, with respect to the crime of murder, "voluntary intoxication can negate only the specific

intent of willfulness, premeditation, and deliberation; it cannot negate malice").

No court has analyzed the interplay of Section 14 and Section 16. If, however, "no act . . . is less criminal because committed while [voluntarily intoxicated]," 14 V.I.C. § 16, it follows that a person cannot become incapable of committing a crime "in consequence of [voluntary intoxication]," 14 V.I.C. § 14(4). Indeed, if both statutes are to be given effect, this is the most plausible reading. Even without the aid of a statute similar to Section 16, New Hampshire--one of the few jurisdictions to also utilize the product test for insanity--has determined that insanity defenses premised on voluntary intoxication are generally unavailable.

In New Hampshire, "[a] person who is insane at the time he acts is not criminally responsible for his conduct." N.H. Rev. Stat. Ann. § 628:2. Similar to the Virgin Islands, "[a] defendant asserting an insanity defense [in New Hampshire] must establish that he suffered from a mental illness and that the crime charged was a product of that illness." *State v. Labranch*, 156 N.H. 740, 742 (2008). Under this test, voluntary intoxication alone cannot constitute a mental illness. *See State v. Sadvari*, 123 N.H. 410, 415 (1983); *State v. Plummer*, 117 N.H. 320, 328 (1977). Rather, "a defendant c[an] be found not guilty

by reason of insanity only if his actions were the result of a mental disease in the form of chronic alcoholism or drug abuse, i.e., he was rendered incapable of exercising his volition." *Sadvar*, 123 N.H. at 415; *see also Plummer*, 117 N.H. at 328 ("[O]nly when the defendant claims that his condition of chronic alcoholism constitutes a mental disease or insanity which renders him incapable of exercising his volition and thus constitutes a complete defense to an alleged criminal act that he will be allowed to present evidence of this condition.").

This result is similar to the laws of many jurisdictions that have addressed the issue under other insanity tests.[2] As the

---

[2] *See, e.g.*, *State v. Silvers*, 323 N.C. 646, 657 (1989) ("[P]ersons who are legally insane are exempt from criminal responsibility. Voluntary intoxication, on the other hand, does not relieve a defendant altogether from criminal responsibility. At most it may negate the element of specific intent in those crimes in which that element must be proved."); *Com. v. McGrath*, 358 Mass. 314, 320 (1970) (approving instruction to jury that, "if you . . . find that, by reason of and because of his voluntary use of drugs or drugs and alcohol on the day of the crimes or the few days before the crimes, [the defendant] lost his substantial capacity to appreciate the criminality of his conduct or the substantial capacity to conform his conduct to the requirements of law, you would . . . be warranted in returning verdicts of guilty"); *State v. Booth*, 169 N.W.2d 869, 873 (Iowa 1969) ("[P]rolonged extensive use of alcohol [that] damages the brain and [causes] 'settled or established' insanity . . . is treated the same as insanity from any other cause. However, a temporary condition caused by voluntary intoxication . . . does not excuse one from responsibility for his conduct."); *State v. Clokey*, 83 Idaho 322, 330, 364 P.2d 159, 164 (1961) (approving instruction to jury that "settled insanity produced by long continued intoxication has the same effect as to legal responsibility for one's conduct as insanity produced by any other cause"); *Cochran v. State*, 65 Fla. 91, 98-99 (1913) ("The mental effects of a mere voluntary intoxication may not excuse the commission of an unlawful act or relieve from its consequences; but if excessive and long-continued use of intoxicants produces a mental condition of insanity, permanent or intermittent, which insane condition exists when an unlawful act is committed, such insane mental condition may be of a nature that would relieve the person so affected from the consequences of the act that would otherwise be criminal and punishable.").

Ninth Circuit has explained, the rationale for these decisions is based on "a principle that runs throughout the insanity defense, from its origin in *M'Naghten's Case,* 10 Cl. & F. 200, 8 Eng. Rep. 718 (1843), through its American Law Institute evolution." *See United States v. Knott*, 894 F.2d 1119, 1122 (9th Cir. 1990). Namely, that "[a] mental disease or defect must be beyond the control of the defendant if it is to vitiate his responsibility for the crime committed. Insanity that is in any part due to a defendant's voluntary intoxication is not beyond his control." *Id.* (citations omitted).

Here, generously construing Carty's *pro se* submissions, he argues only that his counsel should have raised an insanity defense based on Carty's intoxication on the day of January 28, 2007. That is, an insanity defense based on Carty's temporary intoxication. Such a condition may be used to negate the specific intent elements of a crime. To that end, evidence of Carty's intoxication was introduced at trial. Additionally, jury instructions to that effect were given. Temporary intoxication, however, is not a valid basis for an insanity defense. Accordingly, Carty's counsel cannot be deemed constitutionally deficient for failing to raise that defense.

For the reasons stated, the Court will deny Carty's § 2254 petition.[3]

An appropriate order follows.

                                                S\_____
                                                   **Curtis V. Gómez**
                                                   **District Judge**

---

[3] A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). There being no "substantial showing" that Carty's constitutional rights were violated, a certificate of appealability will not be issued. *See United States v. Eyer,* 113 F.3d 470 (3d Cir. 1997); 3rd Cir. Local Appellate Rule 22.2 (2011).